IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03171-KAS

D.S.[1]

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on the **Social Security Administrative Record** [#9], filed February 3, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II and for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#11] (the "Brief") and Defendant filed a Response [#15] in opposition. Plaintiff did not file a Reply and briefing has closed. *See Reassignment* [#16]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **REVERSED AND REMANDED**.[2]

## I. Background

On June 9, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II, and an application for supplemental security income under Title XVI, in both cases alleging disability beginning June 22, 2019. Tr. 10.[3] His claims were initially denied on November 24, 2020, and again on reconsideration on September 8, 2021. *Id.* On May 27, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 28. On October 19, 2022, the Appeals Council denied review. Tr. 1.

The ALJ first determined that Plaintiff meets the insured status requirements of the Act through September 30, 2022, and that he has not engaged in substantial gainful activity ("SGA") since June 22, 2019, the alleged onset date. Tr. 13. The ALJ then found that Plaintiff suffers from thirteen severe impairments: (1) mild degenerative disc disease, spondylolisthesis, disc bulge, foraminal stenosis, and compression fracture of the lumbar spine with radiculopathy; (2) spasmodic torticollis; (3) degenerative disc disease of the cervical spine with radiculopathy; (4) rotator cuff tear of the right shoulder status post arthroscopic repair; (5) degenerative joint disease of the bilateral hips; (6) carpal tunnel syndrome of the bilateral upper extremities; (7) type II diabetes mellitus with neuropathy;

---

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#10]; *Reassignments* [#16, 17]; *Order of Reference* [#18].

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9 through 9-8, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's original numbering.

(8) left peroneal neuropathy; (9) ventral hernia; (10) obesity; (11) mild traumatic brain injury ("TBI"); (12) depression; and (13) anxiety. Tr. 13. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Tr. 14.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[4] with the following exceptions:

> can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and he can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. He can frequently reach, handle, finger, feel, or operate hand controls with the bilateral upper extremities. He can tolerate no more than a moderate noise level, and he can have no exposure to hazards, including unprotected heights. Mentally, he is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions.

Tr. 17. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a retail salesclerk or conveyor belt repairer. Tr. 26. The ALJ further found that Plaintiff was a "younger individual age 18-49" on the alleged disability onset date but noted that Plaintiff

---

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

subsequently changed category to "closely approaching advanced age (20 CFR 404.1563 and 416.963)." *Id.* The ALJ noted that Plaintiff he had "at least a high school education." *Id*. The ALJ noted that transferability of job skills was immaterial to his disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Routing Clerk," with 30,000 jobs nationally; "Dealer Accounts Investigator," with 10,000 jobs nationally; and "Office Helper," with 10,000 jobs nationally. Tr. 26-27. The ALJ therefore found that Plaintiff was not disabled at step five. Tr. 28.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter

been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their]

limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4), 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.    Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with

substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal' separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to properly assess the medical opinion evidence, in particular the opinions of Dr. Jacobs and Nurse McPhee; (2) failing to properly evaluate Plaintiff's subjective symptom testimony; (3) limiting Plaintiff to a 'moderate noise level' without articulating the basis for this limitation; and (4) failing to evaluate medical evidence underlying Plaintiff's prior, unfavorable disability hearing. *Brief* [#11] at 9-24. Because the ALJ's failure to explain the RFC's "moderate noise level" limitation requires the matter be remanded for further proceedings, the Court declines to address Plaintiff's first, second, or fourth arguments.[5]

### A.    The ALJ's Duty to Explain

Plaintiff argues that the ALJ assessed a moderate noise level limitation "in the interest of safety" but "never articulated, either in his opinion or during the hearing, what noise levels would constitute a danger or why." *Brief* [#11] at 21 (citing Tr. 17, 23). Plaintiff further argues that "the ALJ does not explain how or why limiting the Plaintiff's exposure to a 'moderate noise level' satisfies the safety concern that was found to exist[,] the Court

---

[5] *See, e.g.*, *Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014) (addressing "only so much of plaintiff's arguments as are sufficient to require reversal"); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (declining to "reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

is left to guesswork in trying to figure it out." *Id.* Defendant responds that "it is Plaintiff's burden to demonstrate that a more restrictive RFC was necessary, not the ALJ's burden to prove that it was not." *Response* [#15] at 19. Defendant argues that, unless Plaintiff can show that the record compels a more restrictive RFC, there is no reversible error. *Id.* (citing *Tammi F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020)).

Defendant's focus on reversible error is too narrow. To be sure, reversible error *can* occur when the claimant shows that the ALJ's RFC is not sufficiently restrictive. *See, e.g.*, *Jaramillo v. Colvin*, 576 F. App'x 870, 876-78 (10th Cir. 2014) (reversing and remanding because the ALJ's RFC finding omitted the claimant's moderate limitations). However, the Court must also reverse and remand where the ALJ fails to articulate the basis of an RFC assessment. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination."). This is because the ALJ's lack of explanation prevents the Court from meaningfully reviewing his decision. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (reversing and remanding because the ALJ's "reasons for rejecting [an] opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings").

**B.    The Moderate Noise Limitation**

As part of his RFC determination, the ALJ found that Plaintiff "can tolerate no more than a moderate noise level." Tr. 17. The record shows the importance of noise limitations to the ALJ's step five analysis: the VE initially provided three representative occupations based on Plaintiff's assessed RFC, but he later withdrew one of the representative occupations, i.e., small parts or bench assembler, based on the moderate noise limitation.

Tr. 67, 71. Because noise limitations can rule out entire occupations at step five, the ALJ must articulate the basis for any such limitations so the Court can meaningfully review them. *Langley*, 373 F.3d at 1123.

Unfortunately, the basis for the ALJ's "moderate noise" limitation is completely unclear from the decision. The extent of the ALJ's explanation is: "In the interests of safety, given his mild TBI and due to the combinations of his conditions, the RFC finds [sic] the claimant can tolerate no more than a moderate noise level, and he can have no exposure to hazards, including unprotected heights." Tr. 23. This raises more questions than it answers: What "interests of safety" and what "combinations of conditions" did the ALJ consider, and what did he base those considerations on? How did the ALJ determine that a *moderate* noise level limitation would address these safety concerns or accommodate those conditions? Which of the listed limitations (noise, hazards, and heights)[6] is supported by the "interests of safety," the "mild TBI,"[7] or the "combinations of conditions" respectively? The ALJ's explanation is inscrutable, and rest of the decision offers no help—the only other mention of "noise" in the ALJ's decision is in the RFC finding itself. Tr. 17.

Plaintiff is correct—the Court "cannot follow the ALJ's reasoning to determine whether the noise limitation is supported by substantial evidence." *Brief* [#11] at 20. In response, Defendant does not address the ALJ's lack of explanation, but instead offers alternate reasons which could support a moderate noise limitation, such as the ALJ's

---

[6] The Court notes that of these three limitations listed here, Plaintiff only raises the noise limitation. *Brief* [#11] at 20-21. Still, the ALJ lumping all three limitations together makes it even more difficult for the Court to determine the ALJ's basis for the noise limitation, in particular.

[7] The passing mention of Plaintiff's mild TBI is no help, because the ALJ does not explain why that condition would specifically require a moderate noise limitation.

finding that Plaintiff has migraines. *See Response* [#15] at 20 (arguing that Plaintiff "ignores the plain logic of limiting a person with migraines from loud noise and workplace hazards"). However, the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga*, 482 F.3d at 1207-08; *see also Willingham v. Berryhill*, Civil Action No. 17-1061-JWL, 2018 WL 1070891, at *3 (D. Kan. Feb. 26, 2018) (rejecting the Commissioner's argument that the ALJ's failure to explain the basis for the RFC determination does not warrant remand because the determination is supported by the evidence).

Here, Defendant twice insists that the ALJ's finding of migraines provides a sufficient logical basis for the ALJ's moderate noise limitation. *Response* [#15] at 19 (stating that Plaintiff's argument is "misplaced" because "[t]he ALJ found Plaintiff had migraines, though he found it a non-severe impairment") (citing Tr. 14); *id.* at 20 (noting "the plain logic of limiting a person with migraines from loud noise and workplace hazards"). That may be true, but it was not the ALJ's stated reason for assessing a moderate noise limitation. Tr. 17, 23. He mentioned "interests of safety," Plaintiff's "mild TBI," and unspecified "combinations of [Plaintiff's] conditions"—not migraines. Tr. 23.

Defendant "supplies some reasons that it believes would support the ALJ's RFC finding" but "the ALJ did not provide these explanations." *Haga*, 482 F.3d at 1207. The Court cannot adopt Defendant's post-hoc rationalization that the ALJ's moderate noise limitations are justified by his finding of migraines. *Id.* The ALJ's decision "must be evaluated based solely on the reasons stated in the decision." *Willingham*, 2018 WL 1070891, at *3 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). Here,

the ALJ's reasons for assessing a moderate noise limitation are completely unclear from the decision. Tr. 17, 23.

In reaching this conclusion, the Court takes no position on whether a moderate noise limitation is appropriate, more restrictive than necessary, or not restrictive enough. However, the ALJ's failure to articulate the evidentiary basis of his moderate noise limitation requires the Court to remand this matter so the ALJ can explain the evidentiary basis for the limitation. *Willingham*, 2018 WL 1070891, at *3; *accord Haga*, 482 F.3d at 1207-08. Accordingly, the decision of the Commissioner must be **reversed and remanded** for further proceedings.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.[8]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and close this case.

---

[8] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled—only that the ALJ failed to adequately explain a crucial RFC limitation he assessed. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015); *Haga*, 482 F.3d at 1208 ("[W]e therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

Dated: March 29, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge